## ESTHER DITTENFASS LIEBERMAN
*vs.*
## MORRIS LIEBERMAN

Superior Court          Fairfield County          File No. 54124

MEMORANDUM FILED FEBRUARY 28, 1939.

*David Goldstein,* of Bridgeport, for the Plaintiff.

*Shapiro, Goldstein & Brody,* of Bridgeport, for the Defendant.

FOSTER, J.   The writ and complaint in this case are dated September 1, 1937, and were returned to this court on the first Tuesday of October, 1937.   In the complaint a decree of divorce is claimed on the grounds of intolerable cruelty and adultery.   On February 8, 1938, the plaintiff filed an amended complaint withdrawing the charge of adultery and making more specific the charge of intolerable cruelty.   In such amended complaint she specifies that the cruelty consisted of abusive language, without just cause charging the plaintiff with trying to poison the defendant, and violent fits of temper during which the defendant would throw dishes and other articles at the plaintiff and would threaten to kill her.

The case was vigorously tried at length by both parties.

During the trial there was admitted evidence of friendly relations of the defendant with a woman other than his wife, and the wife testified that she contracted a venereal disease from her husband. These matters were admitted on the issue of abusive language, the claim of the plaintiff being that they gave rise to abusive language by the defendant. Not only were the issues of adultery and venereal disease not alleged in the pleadings upon which the case was tried, but they were not proved.

The plaintiff and the defendant were married in 1903 and have four sons, all of adult age. The defendant has prospered in business and has aided his sons in getting started in life. The plaintiff has always worked hard and aided her husband. Both plaintiff and defendant are vigorous, opinionated people and each is willing to go to great lengths to accomplish a desired end. In so far as the plaintiff is concerned, this fact is evidenced by the charges above mentioned, to which she emphatically testified and which the court discredits.

There was a time when the defendant had placed a considerable portion of his property in the name of his wife and some of his sons. In the spring of 1937, he persuaded them to return this property to him. Later they endeavored to persuade him to give it back to them, but this he refused to do. Finally, about the first of September, 1937, the plaintiff, with the aid of one of her sons, removed all personal property from their home in the absence of her husband and without warning to him, and she thereupon instituted this action. In the prosecution of this action, the plaintiff has had the hearty cooperation of her three oldest sons. The attitude of the youngest son did not appear in evidence.

That the plaintiff and defendant have had many arguments and that harsh words have passed between them from one to the other, there can be no doubt, but the arguments and trouble were nearly always about money and property.

The attitude of the three oldest sons deserves a word of comment. Their testimony might be strongly corroborative of the plaintiff's testimony, but it is only too obvious that they believe that it will be for their own best personal financial interest to support their mother rather than their father.

Harsh words and other acts of temper, especially when more or less continuous, may at times constitute intolerable cruelty, but intolerable cruelty is such conduct as makes the continuance

of married life between husband and wife intolerable. Whatever the defendant said or did to his wife did not make life with him intolerable to her. She lived with him from 1903 to 1937 and she would return to him if he were willing to turn over to her half of his property or more.

The plaintiff testified in part as follows:

Q—Before the suit was started, didn't you ask your husband for a deed to the property?

A—I asked him to return the stock.

\* \* \*

Q—Didn't he at that time (after the institution of this action) say to you something like this: "We are getting along in years. I am old. Why don't we take a trip somewhere? Go down to Florida for a month and start all over again away from the children. We can live together for a month down there." Did he say something like that?

A—He did say "We will try to start all over again. We will go to Florida." I was satisfied to go with him.

Q—You were satisfied to go with him?

A—Yes, I thought I will take another chance.

\* \* \*

Q—Now, at that time (after the institution of this action) do you remember that you said to your husband, "First I would have been satisfied if I got half of the property but now I want it all or I won't go back or do anything about it?"

A—Yes, I did say so.

Q—Did you say that?

A—Yes, because I know he don't give up.

Near the end of the trial, in answer to questions propounded by her own counsel upon direct examination, the plaintiff testified in part as follows:

Q—Do you remember going to Mrs. Luthy or seeing Mrs. Luthy about your husband coming back?

A—Well—

Q—Say "yes" or "no."

A—Yes.

Q—Do you remember all this period that you were confer-

ring with me and Mr. Goldberg?

A—Yes.

Q—And everybody trying to affect a reconciliation. Did you talk with Mrs. Luthy about property?

A—No. Well, she explained to me to have the property done on the same way as she has got it. That would be best way to be both protected.

Q—What did you say to Mrs. Luthy about this property matter when you talked about going back with your husband?

A—I told her I would like to get the property to protect him and the children, because if anything will happen this Molly will jump on him and she will want to get some property away from him.

Q—The property originally was in his name, wasn't it?

A—Yes, that time it was when he said he was sick he got everything.

Q—It was in the spring of 1937 that you voluntarily gave him everything?

A—Yes.

Q—Did you say that you would go back to him? What did you say about that?

A—I would go back to him to protect him and the children from that woman, and if he signs everything to me that is the only way, and then I will know that he is not going to have nothing to do with that woman no more.

There is much other evidence in the case from all of the witnesses proving the fact that the act of the defendant most intolerable to the plaintiff was his insistence upon retaining his own property and his unwillingness to place half or more of it in her name. Insofar as support and maintenance is concerned, the defendant has, during this long period of years, supported his wife and dependent children according to his financial ability. The question of his friendly relations with another woman are not an issue in this case, except as they may appear to have been a cause of argument and reproach and criticism on the part of the plaintiff. The sole question for the court to decide is whether the plaintiff has proved by a fair preponderance of the evidence that the defendant was guilty of intol-

erable cruelty as alleged in the complaint as amended.

I find the issues in favor of the defendant.

The petition for divorce is denied and dismissed.